IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**THE LIBERTY INITIATIVE, INC. d/b/a**
**ARKANSAS JUSTICE REFORM COALITION AND**
**SARAH MOORE**                                                    **PLAINTIFFS**

**VS.**                                **NO. 5:24-CV-5120-TLB**

**WASHINGTON COUNTY, ARKANSAS**                                   **DEFENDANT**

BRIEF IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT

## I.      Introduction

Attempting to prevent dismissal, plaintiffs The Liberty Initiative, Inc. d/b/a

Arkansas Justice Reform Coalition ("Liberty Initiative") and Sarah Moore ("Moore")

(jointly, "Plaintiffs") have filed an amended complaint in this action. Dkt. No. 16.

But that amended complaint does not fix the jurisdictional and pleading deficiencies

of the original complaint. Additionally, this matter remains unripe and merits

abstention under the *Pullman* doctrine. Thus, Plaintiffs' first amended complaint

should be dismissed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## II.      Procedural Background and Summary of Argument

Pursuant to Fed. R. Civ. P. 10(c), defendant Washington County, Arkansas

("the County") incorporates by reference its procedural background and summary of

argument contained in its original motion to dismiss. *See* Dkt. No. 8, 2-3. Following

the County's filing of the original motion to dismiss, Liberty Initiative filed a

response in opposition to that motion to dismiss which stated that an amended

pleading would be forthcoming. Dkt. No. 13. The Court granted the County leave to file a reply brief. Dkt. Nos. 14, 15. And Plaintiffs filed their first amended complaint on July 19, 2024. Based on the filing of that first amended complaint, the Court denied as moot the County's original motion to dismiss. Dkt. No. 17. However, despite adding a new plaintiff and new claims, Plaintiffs' first amended complaint suffers from the same defects as the original complaint.

*First*, Neither Liberty Initiative nor Moore has ever had any legally protected interest at issue. The federal funds in question have never belonged to either of the Plaintiffs. Liberty Initiative is not a citizen of Washington County, Arkansas. And Plaintiffs cannot establish standing by simply asking this Court to "have the Government act in accordance with law."

*Second*, as Plaintiffs essentially concede from previous briefing, neither the Coronavirus Relief Fund ("CRF"), *codified as* 42 U.S.C. § 801, nor the Coronavirus Local Fiscal Recovery Fund ("CLFRF"), *codified as* 42 U.S.C. § 803, confers a private right of action to Plaintiffs. Plaintiffs has not established any basis upon which any other statute might confer a private right of action as to either the CRF or CLFRF.

*Third*, Plaintiffs' complaint fails to state a claim that is plausible on its face. Plaintiffs claim that Liberty Initiative was "entitled to the funds." Dkt. No. 16, ¶ 63. But Plaintiffs do not plead facts to show that the funds belonged to either Liberty Initiative or Moore at any point. Plaintiffs do not allege facts that would show a violation of the equal protection clause, whether under intermediate scrutiny or

rational basis review. And as to the Plaintiffs' added establishment clause claim, Plaintiffs do not allege facts to show a violation of the establishment clause that would trigger strict scrutiny analysis.

*Fourth*, Plaintiffs' allegations remain unripe, as more than $290,000 of the funds at issue have yet to be expended.

*Fifth*, Plaintiffs' requests for relief remain non-justiciable because they improperly intrude in the legislative decision-making of the County, which is entitled to significant deference as a political subdivision of the State of Arkansas. To the extent this Court finds that it has jurisdiction, the Court should abstain from exercising it under the *Pullman* doctrine and instead direct Plaintiffs to pursue their state law remedies under Ark. Code Ann. § 14-23-101, *et seq.*

For each of these reasons, the Court should dismiss Plaintiffs' complaint.

## III.   Motion to Dismiss Standard

Pursuant to Fed. R. Civ. P. 10(c), the County incorporates by reference the motion to dismiss standard set forth in its brief in support of the original motion to dismiss. Dkt. No. 8, at 3-5.

## IV.   Argument

### A.   Plaintiffs lack standing to bring these claims

As set out in the original brief, Plaintiffs lack standing to sue. Plaintiffs invoke federal question jurisdiction, which grants federal district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. However, because Plaintiff has failed to meet its

burden to show it has standing to bring any of its claims, federal question jurisdiction is not available.

It is Plaintiffs, not the County, who have the burden of establishing their standing to sue. "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136 (1992). Binding precedent holds that "the injury-in-fact component requires a *plaintiff to show* that he or she suffered an invasion of a legally protected interest." *Miller v. Thurston*, 967 F.3d 727, 734 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 129 S.Ct. 1142 (2009)). Thus, it is Plaintiffs' burden to show "the invasion of a legally protected interest."

Neither of the Plaintiffs has met that burden. New plaintiff Moore does not allege any individual entitlement to any of the funds at issue. Plaintiffs have not added any factual allegations to the first amended complaint to establish the "invasion of a legally protected interest" necessary for this to become the sort of "case or controversy" as necessary for the Court to exercise jurisdiction under the standing doctrine. Instead, Plaintiffs allege only that Liberty Initiative was *eligible* to receive funds to be awarded by the County. Not that Liberty Initiative (or Moore) had any legal right to the funds themselves. Plaintiffs allege that Liberty Initiative "submitted a timely and proper application," but even a timely and proper application does not demonstrate "entitlement to the funds." Dkt. No. 16, at ¶ 63. And Plaintiffs supply no factual basis for the allegation that Liberty Initiative (and not Moore) "was entitled to the funds to serve populations affected by

4

unemployment and to serve low-income populations," beyond conclusory statements in the first amended complaint. *Id.*

Mere eligibility to discretionarily-awarded funds is not a legally protected interest. Instead, it suggests only the possibility of a future interest, i.e., a hypothetical award. Thus, Plaintiffs have "only alleged a conjectural or hypothetical injury, not one that is actual or imminent." *Missouri v. Yellen*, 39 F.4th 1063, 1070 (8th Cir. 2023) (internal quotations omitted). Accordingly, Plaintiffs have "failed to establish that [they have] standing to bring [their] claims." *Id.*

Turning to taxpayer standing, Plaintiffs' first amended complaint essentially concedes the point that Liberty Initiative cannot allege taxpayer standing because it is not a citizen of Washington County, Arkansas. Thus, Liberty Initiative cannot claim taxpayer standing in this action. *See generally Huizenga v. Independent School District No. 11*, 44 F.4th 806, 810-811 (8th Cir. 2022); *see also Frothingham v. Mellon*, 262 U.S. 447, 487, 43 S.Ct. 597 (1923). Bowing to that reality, the first amended complaint adds a new plaintiff, Moore, who alleges she "is a taxpaying citizen who resides in Fayetteville, which is located within Washington County, and objects to Washington County's unlawful use of her tax dollars." Dkt. No. 16, ¶ 4. But Moore also fails to establish the requirements necessary for taxpayer standing.

While Moore's status as a citizen of Washington County, Arkansas *could* support taxpayer standing, Moore's invocation of taxpayer standing fails for a more case-specific reason: Moore's claims do not arise from "Washington County's

unlawful use of *her tax dollars*" because the CRF and CLFRF moneys at issue come from an outlay of *Congress*, not local tax revenues collected by the County.

In *Huizenga*, the Eighth Circuit adopted the Seventh Circuit's test for municipal taxpayer standing. 44 F.4th at 811 (quoting *Protect Our Parks, Inc. v. Chicago Park Dist.*, 971 F.3d 722, 734 (7th Cir. 2020), *cert denied*, 141 S.Ct. 2583 (2021)). Thus, under Eighth Circuit precedent, to allege municipal taxpayer standing Moore must establish two facts: (1) she "must actually be a taxpayer of the municipality that she wishes to sue" and (2) she "must establish that the municipality has spent *tax revenues* on the allegedly illegal action." *Id.* (emphasis added). As the Seventh Circuit noted, "[t]he second requirement comes from the Supreme Court's decision in *Doremus v. Board of Education*, which requires a plaintiff to show that 'the taxpayer's action [...] is a good-faith pocketbook action.'" *Protect Our Parks*, 971 F.3d at 734 (quoting *Doremus v. Board of Education*, 342 U.S. 429, 72 S.Ct. 394 (1952)).

Moore's claims arise from the County's discretionary use of CRF and CLFRF funds, not the County's "allegedly illegal" use of local tax revenues. As outlined above, neither Liberty Initiative nor Moore has shown any legally protected interest in any of the CRF or CLFRF funds at issue. Here, as in *Doremus*, there is no "direct and particular financial interest" for Moore to show the sort of "good-faith pocketbook action" required for municipal taxpayer standing. 342 U.S. at 434. Thus, Plaintiffs have not pleaded claims sufficient to trigger taxpayer standing under *Huizenga* and *Doremus*.

As with the original complaint, Plaintiffs' first amended complaint seeks remedies based on "an asserted right to have the Government act in accordance with law," but that sort of claim "is not sufficient, standing alone, to confer jurisdiction on a federal court." *Allen v. Wright*, 468 U.S. 737, 754, 104 S.Ct. 3315, 3326 (1984). This applies with greatest force to count three of Plaintiffs' first amended complaint, which invokes the Federal Declaratory Judgment Act to ask the Court to "declare that Washington County's use of these *federal* funds to construct a new jail facility is unlawful." Dkt. No. 16, ¶ 81 (emphasis added). The next paragraph asks the Court to "preliminary and permanently enjoin Washington County from using these *federal* funds to construct new jail facilities." *Id.*, ¶ 82 (emphasis added). These are precisely the sort of claims foreclosed under *Allen*; they are bare requests that the Court "have the Government act in accordance with law." 468 U.S. at 754.

As to the redressability prong of the standing analysis, Plaintiff cannot show that its "requested injunctions would redress Plaintiff's injuries," which means that "[Plaintiffs do] not have standing to bring [their] claims against the County in this Court." *Brittany O. v. Bentonville School District*, 2016 WL 1-064637, *3 (W.D. Ark. Mar. 15, 2016), *affirmed in part, reversed in part by Brittany O. v. Bentonville School District*, 683 Fed.Appx. 556, 558 (8th Cir. 2017) ("[W]e conclude that the district court did not err in determining that [plaintiff] lacked standing."). In sum, since Plaintiffs lack standing to bring these claims, this Court lacks subject-matter jurisdiction over this action.

**B.      Plaintiffs have no private right of action to bring these claims.**

The second reason the Court should dismiss the first amended complaint for

lack of jurisdiction is because Plaintiffs lack a private right of action to bring these

claims. Every court to consider the question has ruled there is no private right of

action under the Coronavirus Aid, Recovery and Economic Security Act (CARES)

Act, or the American Recovery Plan Act ("ARPA"), which are the sources of the CRF

and CLFRF funds giving rise to Plaintiffs' allegations. While the complaint invokes

the Federal Declaratory Judgment Act, *codified as* 28 U.S.C. § 2201, that statute

does not confer a private right of action. And Plaintiffs have not pleaded facts

sufficient to trigger jurisdiction under 42 U.S.C. § 1983.

*First*, none of the federal statutes appropriating the funds at issue confers a

private right of action to Plaintiffs. While the Eighth Circuit has not decided the

question, no court appears to have ever found a private right of action under either

the CARES Act or ARPA. "[N]either the CARES Act nor the CAA nor the ARPA

provide for a private right of action." *Baxter v. United States*, 2023 WL 2418369, *3

(S.D.W. Va. Feb. 16, 2023) (collecting cases).[1]

---

[1] *Byers v. Rettig*, 2022 WL 3105184, *4 (W.D.N.C. Aug. 8, 2022) ("To the extent that
the Plaintiff asks the Court to compel the IRS to provide EIPs, he is not entitled to
assert a private cause of action for disbursement of the funds."); *Bynoe v. Yellen*,
2022 WL 1516592, *5 (D. Nev. Jan. 5, 2022), report and recommendation adopted,
2022 WL 1014982 (D. Nev. April 5, 2022) ("[I]t does not appear that a private cause
of action can be maintained under the legislation authorizing the disbursement of
these funds. The laws do not indicate that there is a private cause of action for non-
receipt of [EIP] funds"); *Breton v. Mnuchin of IRS*, 2021 WL 5086400, *3 (D. Conn.
Nov. 2, 2021) (finding that the CARES Act does not provide for a private right of
action); *Puckett v. U.S. Dept. of Treasury Internal Revenue Service*, 2021 WL
2550995, *2 (N.D. Ohio June 22, 2021) ("The CARES Act did not establish a private

*Second*, the text of the Federal Declaratory Judgment Act does not confer a private right of action. That statute specifies that such a declaration is available *only* "in a case of actual controversy." 28 U.S.C. § 2201. Because Plaintiffs lack standing to present their claims, as outlined above, Plaintiffs cannot establish the sort of "case of actual controversy" required to invoke the Federal Declaratory Judgment Act. *See generally Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461 (1937). The Federal Declaratory Judgment Act "is operative only in respect to controversies which are such in the constitutional sense. The word 'actual' is one of emphasis rather than of definition. Thus, the operation of the Declaratory Judgment Act is procedural only." *Id.*, at 240. Because the Federal Declaratory Judgment Act does not confer an independent right of action, Plaintiffs must show a separate, constitutionally sufficient basis for standing to trigger any of its potential remedies.

*Third*, Plaintiffs' invocation of 42 U.S.C. § 1983 also fails. To state a claim under section 1983, each of the Plaintiffs must allege two essential claims: (1) a right secured by the Constitution or laws of the United States was violated; and (2) that violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiffs have failed to meet either prong.

---

right of action to dispute the IRS's determination of an individual's eligibility for the EIP."); *Phelps v. Mnuchin*, 2021 WL 2138506, *4 (N.D. Ind. May 26, 2021) ("there is no suggestion there is a private cause of action under the CARES Act for receipt of specific non-disbursed funds, and '[i]t is not this Court's function to raise up a cause of action where a statute has not created one.").

As to the first prong, and as outlined above, Plaintiffs have not established any legally protected interest in the funds in question. It was the County which was awarded funds under the CARES Act and ARPA, not Plaintiffs. Plaintiffs seek the award of moneys belonging to the County; not the award of moneys belonging to either of the Plaintiffs. Because Plaintiffs lack standing to sue, Plaintiffs' first amended complaint has not alleged a violation of any right secured by the Constitution or laws of the United States.

Yet another problem arises from the second prong. Here, Plaintiffs predicate their claims on an argument that certain *federal* funds at issue were to be awarded pursuant to *federal* law. Thus, based on Plaintiffs' own claims, the County was acting under color of *federal* law, not state law. Under Plaintiffs' theory of the case, the County is not a "person" as defined under section 1983, since the County is not acting under color "of any statute, ordinance, regulation, custom, or usage of any *State or Territory or the District of Columbia.*" 42 U.S.C. § 1983 (emphasis added).

Plaintiffs' claims might perhaps be contemplated as a *Bivens* action,[2] but not as an action under section 1983. However, as caselaw makes clear, Plaintiffs may not proceed on a *Bivens* claim against the County in its capacity as a policymaking entity. "The purpose of *Bivens* is to deter *individual federal officers* from committing constitutional violations." *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 70, 122 S.Ct. 515, 521 (2001) (emphasis added). A *Bivens* action is not "a proper vehicle

---

[2] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999 (1971).

for altering an entity's policy." *Ziglar v. Abbasi*, 582 U.S. 120, 140, 137 S.Ct. 1843, 1860 (2017).

Plaintiffs' claims "would call into question the formulation and implementation of [the County's] general policy. This, in turn, would necessarily require inquiry and discovery into the whole course of the discussions and deliberations that led to the policies and governmental acts being challenged." *Id.*, at 141. Under *Ziglar*, such consequences disfavor allowing such a *Bivens* action to proceed. *See id.* Accordingly, Plaintiffs cannot invoke section 1983 to assert a private right of action, and the federal analogue of *Bivens* offers no right for Plaintiffs to seek a remedy against the County as a policymaking body.

## C.   Plaintiffs' first amended complaint fails to meet the plausibility standard under *Twombly* and *Iqbal*.

In the alternative, even if the Court could properly exercise subject-matter jurisdiction, the Court should dismiss Plaintiffs' first amended complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Plaintiffs' first amended complaint contains mere "labels and conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs have pleaded only "naked assertion[s] devoid of further factual enhancement." *Id.* Therefore, Plaintiffs' first amended complaint fails to state a claim to relief that is plausible on its face.

Plaintiffs make the bare allegation that Liberty Initiative was "entitled to the funds." Dkt. No. 16, ¶ 63. But, as recounted above, Plaintiffs do not show the funds at issue have ever belonged to either of the Plaintiffs at any point. Nor do Plaintiffs

allege facts that would show a violation of the equal protection clause under intermediate scrutiny or rational basis review. Plaintiffs allege the County "was entrusted" with federal funds and "had a duty to distribute them in accordance with the statutory purposes." *Id.*, ¶ 62. But Plaintiffs do not allege that any of the federal statutes *mandated* that the County must have distributed specific funds to Liberty Initiative based on Liberty Initiative's specific application.[3]

Nor could Plaintiffs support such an allegation, as shown by the exhibits Plaintiffs attached to their first amended complaint. Plaintiffs submitted a copy of Liberty Initiative's application for the funds to be awarded by the County. Dkt. No. 16-1. Plaintiffs allege Liberty Initiative submitted that application "in a form promulgated by Washington County." Dkt. No. 16, at ¶ 16. But the plain text of that form states, "Washington County government has been given *discretion* to use the funding in the way *they* best believe addresses the issues of our community." Dkt. No. 16-1, at 11 (emphasis added). Additionally, that form states, "the County Board *has absolute discretion* about approving applications for funding." *Id.*, at 12 (emphasis added). Further, that "*[n]ot ALL applicants meeting guidelines are guaranteed funding." Id.* (emphasis added, capitalization in original).

The application form submitted by Plaintiffs shows it was signed and submitted by new plaintiff Moore. By executing that application, Plaintiffs had clear notice that the County's discretion as part of the application process was "absolute." Plaintiffs have not alleged any claim that the process was defective, nor

---

[3] Separate plaintiff Moore does not allege she applied for funds in her individual capacity or that she would be entitled to receive funds if she had done so.

have Plaintiffs claimed the discretionary authority of the County was somehow improper. Yet Plaintiffs insist Liberty Initiative was "entitled" to funds which their own exhibit demonstrates were to be awarded at the discretion of the County. These clear admissions are "necessarily embraced by the pleadings" and warrant consideration at the motion to dismiss stage. *Nelson Auto Center, Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 956 (8th Cir. 2020). "When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

The Court should closely scrutinize Plaintiffs' unsupported claims that Liberty Initiative was "entitled" to funds which were to be awarded at the "absolute discretion" of the County. Plaintiffs were under no obligation to submit any application pursuant to the County's application process. Plaintiffs purposefully availed themselves of the County's specific application process, to which Plaintiffs assented by executing and submitting Liberty Initiative's application. Plaintiffs have not offered any plausible basis for this Court to conclude Liberty Initiative was ever entitled to funds to be awarded as part of a facially neutral discretionary application process employed by the County.

As to count two of Plaintiffs' first amended complaint, those claims fail to meet the elements required to allege an equal protection violation because Plaintiffs do not allege facts showing the County's application process "discriminates against women" or is otherwise "irrational." Dkt. No. 16, ¶¶ 67, 73. Plaintiffs allege the bare

13

allegation that the mere "use of the federal funds discriminates against women because it has only funded Returning Home (which allegedly does not serve women) and has denied funding to [Liberty Initiative] (which does serve women)." *Id.*, ¶ 67. But that allegation is merely a disparate impact claim, not a discriminatory purpose claim. *See Personnel Adm'r of Massachusettes v. Feeney*, 442 U.S. 256, 99 S.Ct. 2282 (1979). "Discriminatory intent" is "required to establish a constitutional violation." *Id.*, at 266. "A fundamental principle of equal protection is that the Constitution only prohibits intentional or purposeful discrimination by the state." *Klinger v. Department of Corrections*, 31 F.3d 727, 733 (8th Cir. 1994) (citing *Feeney*, 442 U.S. at 274).

Despite modest changes to the language of the first amended complaint, Plaintiffs have still alleged only "differential *treatment*." *See* Dkt. No. 16, ¶ 69 (emphasis added). Plaintiffs allege "the differential treatment was intentional," but there is no factual basis provided for that claim. The alleged intentionality appears to be the following clause set off by a colon: "[A]t all times, Washington County knew that Returning Home's services would not reduce the number of women who are incarcerated and that AJRC's services would reduce the number of women. Washington County intentionally *funded* Returning Home, but not AJRC, despite having sufficient federal funds to fund both." *Id.* (emphasis added). But here again, Plaintiffs' first amended complaint does not show discriminatory *purpose*. At most, Plaintiffs' allegations set out only discriminatory *effects*. Whether the County

intentionally funded a male-only diversion program does not mean the County chose to fund that program *because* it was male-only.

Plaintiffs' invocation of rational basis review should also be dismissed under Fed. R. Civ. P. 12(b)(6). Plaintiffs' first amended complaint cites *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 602 (2008), for the proposition that the equal protection clause "prohibits irrational laws and requires that governments treat like parties alike." Dkt. No. 16, ¶ 72. Plaintiffs claim the County's "decision to deny" Liberty Initiative's application "is irrational given that it granted federal funds to two similarly situated nonprofits." But that claim cannot withstand rational basis scrutiny.

Under rational basis review, "legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987, 996 (8th Cir. 2016) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2019 (1993)). "It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Williamson v. Lee Optical*, 348 U.S. 483, 487-88 (1955).

Declining to award federal funds to one person and instead awarding those funds to another does not violate rational basis scrutiny. The County could rationally conclude that one entity may be better-equipped than another to address the "evil at hand for correction." Or, the County could have second thoughts about a specific process of administering funds, and then later develop a more robust

application process. In any case, the County made sure to notify applicants, like Liberty Initiative, that "not all applicants" would be approved and that funding decisions would be at the County's discretion.  Here too, Plaintiffs' first amended complaint rests on mere "labels and conclusions," which are specifically controverted by the actual exhibits Plaintiffs attached to it.

In addition to adding a new plaintiff, Moore, Plaintiffs' first amended complaint also adds a new claim under the establishment clause as its count four. Plaintiffs allege that the establishment clause "prohibits governmental funding of religious organizations to the exclusion of similarly situated secular actors." Dkt. No. 16, ¶ 83. Plaintiffs claim that a certain funding recipient (which is not a party) "requires that those entrusted to its care undergo Christian programming in order to avoid incarceration in the Washington County jail." Dkt. No. 16, ¶ 84. Plaintiffs claim that recipient "is similarly situated" as Liberty Initiative "because both provide services for the ultimate purpose of reducing the number of inmates at the Washington County jail." *Id.*, ¶ 85. And Plaintiffs allege the County "intentionally funded the religious organization but not the secular organization." *Id.*, ¶ 86.

These allegations are insufficient as a matter of law. With regard to the establishment clause, the Supreme Court has held that "[o]ne fixed principle in this field is our consistent rejection of the argument that 'any program which in some manner aids an institution with a religious affiliation' violates the Establishment Clause." *Mueller v. Allen*, 463 U.S. 388, 393, 103 S.Ct. 3062, 3066 (1983). In *Rosenberger v Rector and Visitors of University of Virginia*, the Supreme Court

16

noted that the key question is whether the government's process for the award of funds is religion-neutral. 515 U.S. 819, 843, 115 S.Ct. 2510 (1995) ("A central lesson of our decisions is that a significant factor in upholding governmental programs in the face of Establishment Clause attack is their neutrality toward religion."). As the Supreme Court held in *Rosenberger*, "[t]he government usually acts by spending money." *Id.*

Plaintiffs do not claim the *purpose* of the County's funding process was to favor religious groups over non-religious groups. That intentionality is a necessary component of any constitutional claim arising under the establishment clause. Once again, Plaintiffs have failed to allege discriminatory *purpose* so as to warrant heightened scrutiny. As with the equal protection analysis, whether the County intentionally funded a religious organization does not mean the County chose to fund that program *because* it was religious. Therefore, Plaintiffs have failed to state a claim upon which relief can be granted as to the establishment clause.

**D.    Plaintiffs' claims are not ripe.**

The Court should dismiss Plaintiffs' first amended complaint for failure to state a claim because Plaintiffs' claims are not ripe. Plaintiffs do not allege the funds in question have been fully expended. Plaintiffs allege the County received "about $46 million in funding." Dkt. No. 16, ¶ 10. But Plaintiffs do not allege that the "$46 million in funding" is exhausted, so as to prevent Liberty Initiative from ever receiving funds under the application process. Thus, Plaintiffs' claims are unripe.

17

Plaintiffs allege the County awarded $2.9 million to a separate organization, UPSKILL NWA, in December 2021. *Id.*, ¶ 11-12. Plaintiffs allege the County awarded a separate organization, Returning Home, "some of the federal funds," without specifying the alleged amount. *Id.*, ¶ 14. Plaintiffs allege the County received recommendations from the Northwest Arkansas Economic Development District ("the District") to propose "approving seven applications seeking a combined $564,481." *Id.*, ¶ 23. Plaintiffs note, "Washington County never approved any of the applications recommended by the District." *Id.*, ¶ 25. But Plaintiffs' allegation that "Washington County never approved" the applications recommended by the District is *not* an allegation that Washington County *denied* those allegations. *Id.*

Plaintiffs submitted as exhibits a request for qualification for expansion of the Washington County Detention Center; an ordinance passed by the County appropriating $8.8 million to expand the jail; and an additional appropriation of $10 million made by the County. Dkt. Nos. 16-3, 16-4, 16-5. But even if those were funded exclusively by the "$46 million in funding," and even if coupled with the allocations of $2.9 million, approximately half of the $46 million would not yet have been distributed, according to the facts pleaded in Plaintiffs' first amended complaint.

Plaintiffs' application sought the award of $290,000. Dkt. No. 16, ¶ 16. Plaintiffs do not allege that the County no longer has $290,000 to potentially award under its "absolute discretion." Thus, Plaintiffs' complaint fails to show either that (1) the CRF or CLFRF funds have actually been *exhausted*; or (2) that such an

18

exhaustion has proximately caused a permanent deprivation of any right to receive those funds that Plaintiffs claim to have.

**E.     The Court should direct Plaintiffs to exhaust state law remedies.**

Plaintiffs' requests for relief are non-justiciable because they improperly intrude in the legislative decision-making of the County, which is entitled to significant deference as a political subdivision of the State of Arkansas. Accordingly, if the Court determines that it should not dismiss the complaint for lack of jurisdiction or failure to state a claim, then the Court should still abstain from exercising any jurisdiction, either by dismissing without prejudice or staying proceedings until Plaintiffs have established a right to relief under Arkansas law.

This implicates the doctrine known as *Pullman* abstention. *See generally Railroad Commission of Tex. v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643 (1941). As outlined in *Pullman*, "[i]n the absence of any showing that these obvious methods for securing a definitive ruling in the state courts cannot be pursued will full protection of the constitutional claim, the district court should exercise its wise discretion by staying its hands." *Id.*, at 501. And the Supreme Court directed the district court "to retain the bill pending a determination of proceedings, to be brought with reasonable promptness, in the state court in conformity with this opinion." *Id.*, at 501-502.

In *Louisiana Power & Light Co. v. City of Thibodaux*, the Supreme Court affirmed a district court's stay of a civil action to allow "the institution of a declaratory judgment action and subsequent decision by the Supreme Court of

Louisiana." 360 U.S. 25, 30, 79 S.Ct. 1070, 1074 (1959). As the Supreme Court

noted, "[w]e have increasingly recognized the wisdom of staying actions in the

federal courts pending determination by a state court of decisive issues of law." *Id.*,

at 27 (citing *Pullman*, 312 U.S. at 499). At issue in *Thibodaux* was a novel question

of Louisiana statutory construction with regard to the state power of eminent

domain. Ultimately, the Supreme Court reversed the Fifth Circuit's dissolution of

an order staying proceedings issued by the Louisiana district court. As the Supreme

Court noted,

> Caught between the language of an old but uninterpreted statute and
> the pronouncement of the Attorney General of Louisiana, the district
> judge determined to solve his conscientious perplexity by directing
> utilization of the legal resources of Louisiana for a prompt
> ascertainment of meaning through the only tribunal whose
> interpretation could be controlling—the Supreme Court of Louisiana.
> *The District Court was thus exercising a fair and well-considered judicial
> discretion in staying proceedings pending the institution of a declaratory
> judgment action and subsequent decision by the Supreme Court of
> Louisiana.*

*Thibodaux*, 360 U.S. at 30 (emphasis added).

This Court has previously applied *Pullman* abstention to dismiss without

prejudice an action to allow for state law adjudication to be undertaken in the state

courts. *Goodman v. Harness*, 2022 WL 2181075 (W.D. Ark. June 16, 2022). In

*Goodman*, this Court declined to exercise supplemental jurisdiction because the

"state court's determination" of state law issues "could avoid or materially alter the

need for a decision on federal constitutional grounds." *Id.* (quoting *Moe v. Brookings

Cnty.*, 659 F.2d 880, 883 (8th Cir. 1981)).

*Pullman* abstention would be appropriate in the case at hand. Plaintiffs' first amended complaint claims Liberty Initiative is "entitled to the funds" under the County's discretionary application process. True or not, Plaintiffs have *not* alleged the lack of an adequate state law process to seek the award of those funds. Plaintiffs' first amended complaint wholly ignores the robust Arkansas statutory scheme of bringing claims against county governments. *See* Claims Against Counties, Ark. Code Ann. §§ 14-23-101, *et seq.*

Ark. Code Ann. § 14-23-101(a) provides that "all persons having demands against any county shall present them, duly verified according to law, to the county court of the county for allowance or rejection." Subsection (b) authorizes a direct appeal from an order of the county court "as provided by law." Section 14-23-103 authorizes investigation of "all the parties and witnesses, on oath, touching the matter," and authorizes the power "to compel the production of all books, accounts, papers, or documents which may be necessary in the investigation of any matter arising under the provisions of this act."

Plaintiffs have not alleged they are unable to employ appropriate state law mechanisms for presenting their claims against the County. As this Court has found, "the *Pullman* abstention doctrine counsels restraint in the use of federal judicial resources under certain circumstances." *Goodman*, 2022 WL 2181075, at *9 (quoting *Robinson v. City of Omaha, Neb.*, 866 F.2d 1042, 1043 (8th Cir. 1989)).

Those circumstances are met here. Plaintiffs attempt to bring claims for which they lack standing and which contain conclusory and vague allegations

21

directly undermined by the plain text of Plaintiffs' own exhibits. Plaintiffs have not established that these claims are ripe so as to present an actual case or controversy. And yet Plaintiffs have available to them a statutory procedural scheme tailor-made to allow Plaintiffs to bring their claims against the County.

Accordingly, if the Court finds that it has jurisdiction (which the Court should not find), that Plaintiffs has met the *Twombly* and *Iqbal* plausibility standards (which they have not done), and that Plaintiffs' claims are sufficiently ripe so as to present a live controversy (and they are not), then the Court should still refrain from deciding thorny issues of constitutional law by applying *Pullman* abstention either to dismiss without prejudice or stay the action pending the completion of subsequent state court proceedings.

## V.     Conclusion

For the foregoing reasons, Plaintiffs' first amended complaint should be dismissed for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Plaintiffs have not alleged the sort of injury-in-fact necessary to trigger federal question jurisdiction. The remedies sought would not redress Plaintiffs' alleged harms. And Plaintiffs have not pleaded factual allegations sufficient to sustain any of their claims for relief.

To the extent Plaintiffs *could* present claims under these facts, Plaintiffs' claims are non-justiciable because they have not yet ripened into the sort of case or controversy this Court could decide. Beyond the many problems with jurisdiction,

pleading, and ripeness, the Court should apply the *Pullman* doctrine to instruct Plaintiffs to seek relief under Arkansas's statutory scheme conferring to Plaintiffs a clear right of action to bring claims against the County.

Scott A. Irby (99192)
Eric Berger (2004210)
Alexander T. Jones (2015246)
WRIGHT, LINDSEY & JENNINGS LLP
3333 Pinnacle Hills Parkway, Suite 510
Rogers, Arkansas 72201-3699
(479) 986-0888
FAX: (479) 986-8932
E-MAIL: sirby@wlj.com; eberger@wlj.com;
            ajones@wlj.com

and

Thomas N. Kieklak
Harrington Miller Law Firm
4710 S. Thompson, Suite 102
Springdale, Arkansas 72764
(479) 751-6464
FAX: (479) 751-3715
E-MAIL: tkieklak@arkansaslaw.com

*Attorneys for Washington County, Arkansas*