## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

**THE LIBERTY INITIATIVE, INC.**
**AND SARAH MOORE**                                    **PLAINTIFFS**

**VS.**                          **NO. 5:24-CV-5120-TLB**

**WASHINGTON COUNTY, ARKANSAS**                    **DEFENDANT**

### REPLY IN SUPPORT OF MOTION TO DISMISS

This action should be dismissed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

**A.     Standing**

Plaintiffs have not met their burden to establish standing to bring this suit. They cannot show a legally-protected interest in the moneys at issue. Plaintiffs have alleged only a "conjectural or hypothetical injury," i.e., a possible future award of discretionary funds. *See Missouri v. Yellen*, 39 F.4th 1063, 1070 (8th Cir. 2023). In their response, Plaintiffs argue that "[they] suffered a 'direct dollars-and-cents injury.'" Dkt. No. 22, at 1. But Plaintiffs have not and cannot allege any right to the money they seek. Even if Plaintiffs had submitted a "timely and proper application," that would not trigger "entitlement to the funds" because the County had been granted discretion about funding decisions. Dkt. No. 16, ¶ 63; Dkt. No. 16-1 at 11.

Because Plaintiffs never had the right to the moneys in question, they have not plead any "monetary loss" as contemplated by the out-of-circuit case they cited: *Clementine Co., LLC v. Adams*, 74 F.4th 77, 83 (2d Cir. 2023). And Plaintiffs fail to contend with *Miller* or *Yellen*, which are recent Eighth Circuit cases squarely on point. Moreover, Plaintiffs cannot show that any injunction or declaratory

3190991-v1

judgment would redress their claims because declaring a particular use of funds to be unlawful would not mandate the award of funds to Plaintiffs.

Plaintiffs' response cites two district court opinions to contend that denial of an application may trigger standing. Dkt. No. 22, at 7 (citing *Mansor v. U.S. Citizenship & Immig. Servs.*, 685 F.Supp.3d 1000, 1009-10 (W.D. Wash. 2023) and *Cunningham v. U.S. Dep't of Labor*, 670 F.Supp. 1062, 1065 (D. Me. 1987)). But both of those cases are readily distinguishable. In *Mansor* and *Cunningham,* the applications at issue related to rights already held by the plaintiffs, which were at jeopardy of being revoked or terminated.  Here, by contrast, Plaintiffs never had any legally protected interest in the funds at issue.

Plaintiffs attempt to fix the lack of taxpayer standing in their original complaint by adding a new plaintiff, Moore, who is a "taxpaying citizen" of Washington County.  Dkt. No. 22, ¶ 5. However, Moore's invocation of taxpayer standing still fails because Plaintiffs cannot show that the County has spent tax revenues on any allegedly illegal action.  *Huizenga v. Ind. School Dist. No. 11,* 44 F.4th 806 (8th Cir. 2022).  Plaintiffs' response focuses on the fact that taxpayer standing can be used to challenge establishment clause claims, but this misses the point.  Plaintiffs' claims arise from the County's discretionary use of Coronavirus Local Fiscal Recovery Funds ("CLFRF"), not the County's allegedly illegal use of local tax revenues.  Accordingly, both Plaintiffs lack taxpayer standing, and they have not met their burden to show standing to sue.

## B.    Private Right of Action

2

Plaintiffs also lack a private right of action to bring their claims. The consensus among federal courts is that there is no private right of action under either the Coronavirus Relief and Economic Security Act or the American Recovery Plan Act, which are the sources of the funds giving rise to Plaintiffs' claims. Conceding that point, Plaintiffs rely on 42 U.S.C. § 1983. However, that too is unavailing because Plaintiffs cannot show they ever had any legally protected interest in the moneys at issue. Thus, Plaintiffs have not pled the deprivation of a right, privilege, or immunity "secured by the Constitution or laws" of the United States. 42 U.S.C. § 1983. Further, because the funds were distributed under federal law, the County was not acting under color of *state* law when appropriating those funds. Thus, Plaintiffs have failed to meet both prongs under 42 U.S.C. § 1983.

## C.   Equal Protection

Plaintiffs' equal protection claims fail because they do not meet the plausibility standard required under *Twombly* and *Iqbal*. Plaintiffs cannot trigger intermediate scrutiny (and thereby avoid dismissal), because they have not and cannot allege that the County's appropriations decision were undertaken with discriminatory *purpose*, not merely that they had discriminatory *effects*. Further, Plaintiffs' response is *non sequitur*: whether the County "intentionally funded a male-only diversion program" does not mean the County chose to fund that program *because* it was male-only. Dkt. No. 22, at 3.

First, Plaintiffs' response contends there is an "opportunity injury" alleged in count two of the amended complaint and relies on *States v. Virginia,* 518 U.S. 515,

3

532 (1996). Dkt. No. 22, at 8.  Notwithstanding the fact that the amended complaint does not actually allege an "opportunity injury" sustained by Plaintiffs, *Virginia* is inapplicable to Plaintiffs' claims. *Virginia* arose from Virginia Military Institute's refusal to admit women squarely on the basis of sex. *Id.* at 520.  Plaintiffs' pleading alleges only disparate impact, not discriminatory purpose; therefore, reliance on *Virginia* is off point.  The other cases cited by Plaintiffs are also distinguishable. *Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, is inapplicable because Plaintiffs do not allege that the County has "erect[ed] a barrier" for the purpose of making it more difficult for women to obtain a benefit than it is for others, as plaintiffs did in *Virginia.*  508 U.S. 656 (1993). Furthermore, *McDaniel v. Precythe,* is distinguishable because Plaintiffs have not alleged any sort of viewpoint discrimination, as the plaintiffs did there. 897 F.3d 946 (8th Cir. 2018).

As to Plaintiffs' rational basis claims, "legislative choice is not subject to courtroom fact-finding[.]" *Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987, 996 (8th Cir. 2016). Thus, the Court can dismiss those claims at this stage based on a reasonable belief that there was "an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Williamson v. Lee Optical*, 348 U.S. 483, 487-88 (1955).

## D.    Establishment Clause

Plaintiffs' establishment clause claim is based on the assertion that one funding recipient is a religious organization.  That organization houses inmates in order to reduce the number of inmates at the jail.  Plaintiffs allege that Liberty

4

Initiative also "provide[s] services for the ultimate purpose of reducing the number of inmates at the Washington County jail…" Dkt. No, 16, ¶ 85.  Plaintiffs urge that such funding violates the Establishment Clause.  In support, Plaintiffs cite to *Tilton v. Richardson*, 403 U.S. 671, 91 S. Ct. 2091 (1971), which they claim held that financial aid to a religious institution violated the Establishment Clause.  This is not correct.  The Court in *Tilton* found that legislation allowing construction funds to religious higher learning institutions did not violate the Establishment Clause, only striking a provision of the legislation that restricted the religious institution's use of the facility.  *Id.*  Indeed, *Tilton* rejected what it called "the simplistic argument that every form of financial aid to church-sponsored activity violates the [Establishment Clause] …" *Id.* at 679, 2096.  The "crucial question is not whether some benefit accrues to a religious institution as a consequence of the legislative program, but whether its principal or primary effect advances religion."

Nevertheless, Plaintiffs seek to disqualify the funding recipient from the funds in this case on the sole basis of religious status.  *See Trinity Lutheran of Columbia, Inc. v. Comer*, 582 U.S. 449, 137 S.Ct. 198 (2017) (noting a fundamental principal of this Court's free exercise jurisprudence that laws imposing special disabilities on the basis on religious status imposes strict scrutiny review.)  The holding in *Trinity Lutheran* noted that the Court has rejected free exercise challenges where the laws in question have been neutral and generally applicable without regard to religion.  *Id.* at 459, 2020.  Plaintiffs alleged no facts in the amended complaint demonstrating that the funding had the principal or primary

effect of advancing religion.  Plaintiffs only include the conclusory allegation that the County "intentionally funded the religious organization."  As set forth in the County's motion, the mere allegation that the funding recipient is a religious organization is not enough to maintain a claim under the Establishment Clause.

## E.   Justiciability

Plaintiffs do not allege that the funding received by the County has been exhausted so as to prevent Liberty Initiative from ever receiving funds.  Thus, Plaintiffs' claims are not ripe. Further, the use of such funds is subject to federal audit under the enabling laws. Plaintiffs are not permitted to challenge the future use of funds for which they have no property interest and that will be subject to an audit conducted by the Treasury.  That audit process is the appropriate method to evaluate the County's use of the funds in question—not a private lawsuit.

Given the standing, pleading, and ripeness issues with Plaintiffs' amended complaint, it should be dismissed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). However, if the Court is not inclined to dismiss the action on those grounds, then it should apply *Pullman* abstention because Plaintiffs have state-level procedures to bring claims against the County. *See* Ark. Code Ann. § 14-23-101, *et seq.*

Plaintiffs argue that *Pullman* abstention would "require overruling the *Monell* doctrine." Dkt No. 22, at 2.  Not so.  The very point of *Pullman* abstention is to support the doctrine of constitutional avoidance: "constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy." *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 498, 61 S.Ct. 643,

6

644 (1941). *Pullman* abstention avoids the sort of questions that might require overruling the *Monell* doctrine, as prudential concerns favor allowing state level proceedings to unfold.

The federal statutes in question do not confer third-parties a legally protected interest in CRF and CLFRF funds. And Plaintiffs have not pleaded plausible equal protection or establishment clause allegations. Thus, unlike in *Zwickler v. Koota*, the existence of *federal question* jurisdiction is specifically in doubt. 389 U.S. 241, 88 S.Ct. 391 (1967). Resolving that jurisdictional question requires constitutional adjudication under Article III. However, the lack of federal question jurisdiction in *this* Court would not prevent Plaintiffs from bringing a claim under the Arkansas remedial process created by Ark. Code Ann. § 14-23-101, *et seq.* Thus, if the Court is reluctant to dismiss the action, then it should apply *Pullman* abstention to direct Plaintiffs to seek relief under Arkansas's statutory scheme which allows Plaintiffs to bring claims against the County. This would allow state level process to unfold and avoid difficult constitutional issues related to Article III standing. Plaintiffs have not articulated why Arkansas's state law process would be insufficient.

For these reasons, the Court should dismiss Plaintiffs' amended complaint.

WRIGHT, LINDSEY & JENNINGS LLP
3333 Pinnacle Hills Parkway, Suite 510
Rogers, Arkansas 72758-8960
(479) 986-0888
FAX: (479) 986-8932
E-MAIL: sirby@wlj.com; eberger@wlj.com
*Attorneys for Washington County*

7